# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NORTH EAST INSURANCE COMPANY,<br><br>            Plaintiff,<br><br>    v.<br><br>MASONMAR, INC., et al.,<br><br>            Defendants. | Case No.  1:13-cv-00364-AWI-SAB<br><br>ORDER DENYING MOTION TO STAY<br><br>ECF NO. 12 |

Currently pending before the Court is a motion to stay filed by Defendants Nico Bustos, Daniel Mila and Florencio Velasco. (ECF No. 12.) Plaintiff North East Insurance Company filed an opposition to the motion to stay. (ECF No. 17.)

Pursuant to Local Rule 230(g), the Court finds that this matter is appropriate for decision without oral argument. Accordingly, the matter is deemed submitted on the record and briefs on file and the motion hearing scheduled for June 12, 2013 at 9:30 a.m. in Courtroom 9 is vacated and the parties shall not be required to appear at that time.

For the reasons set forth below, the Court denies the motion to stay.

/ / /

/ / /

/ / /

# I.

# BACKGROUND

### A. Plaintiff's Claim for Declaratory Relief

On March 13, 2013, Plaintiff North East Insurance Company (hereinafter "Plaintiff" or "the Insurer") filed the complaint in this action. (ECF No. 1.) Plaintiff's complaint seeks declaratory relief with respect to the proper construction of an insurance policy agreement between Plaintiff and Masonmar, Inc. ("Masonmar" or "the Insured"). Masonmar operates a tavern in Oakdale, California called the "Battered Beaver."[1] Defendants Nico Bustos, Daniel Mila and Florencio Velasco (hereinafter "the Injured Parties") are individuals who filed claims against Masonmar for bodily injuries at or near the Battered Beaver.

Plaintiff alleges that the Masonmar's insurance policy includes Commercial General Liability coverage with a $1 million limit. The Commercial General Liability coverage is subject to an Assault and Battery Limitation which reduces the $1 million limit to $100,000 for claims arising from bodily injury arising from assaults, batteries or other physical altercations that occur in, on, near or away from the Battered Beaver. The insurance policy also includes Liquor Liability insurance with a coverage limit of $1 million.

Plaintiff's complaint alleges that, on or about February 25, 2012, a physical altercation occurred at or near the Battered Beaver involving the Injured Parties. The complaint alleges that a patron named Benjamin Crouch was allegedly asked to leave by a bouncer but later returned to the Battered Beaver and confronted one of the Injured Parties, resulting in an altercation that ended outside in the street where Crouch allegedly stabbed all of the Injured Parties.

### B. Related State Court Action

On April 24, 2013, the Injured Parties filed a lawsuit in the Superior Court of California for the County of Stanislaus, entitled <u>Daniel Mila, et al. v. Masonmar, Inc., et al.</u>, case number 684136. The Injured Parties named Masonmar, Steven Earl Hebenstreit, Damen Martin, Benjamin Crouch and Nicholas Vanlieshout[2] as defendants in the state court action. (Decl. of

---

[1] Masonmar was dismissed pursuant to a stipulation on May 30, 2013. (ECF No. 18.)

[2] Hebenstriet and Martin are the owners and/or employees of Masonmar. Crouch and Vanlieshout are the individuals

Paul R. Scheele in Supp. of Not. of Mot. to Stay Action, Ex. B.)  Plaintiff is not a party in the state court action.  The state court action raises causes of action for assault, battery and negligence.  The state court action remains pending.

To settle the Injured Parties' claims against Masonmar, Plaintiff offered to pay $100,000 allowed under the Assault and Battery Limitation.  The Injured Parties rejected that offer and demanded damages in the amount of $1.1 million, paid out as $100,000 under the Assault and Battery Limitation and $1 million under the Liquor Liability coverage.

### C. Defendants' Motion to Stay

On May 9, 2013, the Injured Parties filed a motion to stay this action. (ECF No. 12.) The Injured Parties argue that this action should be stayed until their state court action is fully adjudicated.  The Injured Parties contend that this action and the state court action address similar issues.  The Injured Parties further contend that a stay in this action would avoid needless determination of state law issues, would discourage forum shopping, would avoid duplicative litigation, would settle all aspects of the controversy, would avoid "procedural fencing," would avoid entanglement between federal and state court, and would be convenient for all parties.

## II.

## DISCUSSION

The Injured Parties seek a stay in this declaratory relief action.  A motion to stay in a declaratory relief action is considered in light of the fact that declaratory relief "is discretionary, for the Declaratory Judgment Act is 'deliberately cast in terms of permissive, rather than mandatory, authority." Government Employees Ins. Co. v. Dizol, 133 F.3d 1220, 1223 (9th Cir. 1998) (quoting Public Serv. Comm'n of Utah v. Wycoff Co., 344 U.S. 237, 250 (1952)).  "The Act 'gave the federal courts competence to make a declaration of rights; it did not impose a duty to do so.'" Id. (quoting Public Affairs Associates v. Rickover, 369 U.S. 111, 1112 (1962)).

When deciding a motion to stay proceedings in a Declaratory Judgment Act action due to a pending proceeding in state court, the Court must consider the factors set forth in Brillhart v.

---

who attacked the Injured Parties.

3

1  Excess Ins. Co. of America, 316 U.S. 491 (1942) and Dizol. The Court (1) should avoid needless
2  determination of state law issues, (2) should discourage litigants from filing declaratory actions as
3  a means of forum shopping, and (3) should avoid duplicative litigation. Dizol, 133 F.3d at 1225.
4  The Court should also consider (4) whether the declaratory action will settle all aspects of the
5  controversy, (5) whether the declaratory action will serve a useful purpose in clarifying the legal
6  relations at issue, (6) whether the declaratory action is being sought merely for the purposes of
7  procedural fencing or to obtain a 'res judicata' advantage, (7) whether the use of a declaratory
8  action will result in entanglement between the federal and state court systems, (8) the
9  convenience of the parties, and (9) the availability and relative convenience of other remedies.
10 Id. at 1225 n.5.

Injured parties argue that a stay is appropriate in this case based upon the nine[3] Brillhart/Dizol grounds. Those arguments are addressed in turn below:

### A.     A Stay Would Not Avoid Needless Determination of State Law Issues

The Injured Parties argue that a stay would avoid needless determination of state law issues because "the same issues that must be decided in the underlying State Action would be decided here." (Mem. of P. & A. in Supp. of Defs.' Mot. to Stay Federal Action ("MPA to Stay") 6:18-20.) However, under this factor, the Court must consider whether the present action would require the Court to address needless determination of novel state law issues. Dizol, 133 F.3d at 1224-1225; see also Progressive Cas. Ins. Co. v. Dalton, No. 2:12-cv-00713-MCE-CKD, 2012 WL 6088313, at * 7 (E.D. Cal. Dec. 6, 2012) ("In considering this factor, courts often examine whether adjudicating the declaratory judgment action will require the determination of novel questions of state law."). Avoidance of duplicative issues is a separate factor considered by the Court.

There is no indication that this declaratory relief action would require the Court to decide novel issues of state law. Plaintiff's complaint asks the Court to interpret the contractual insurance agreement and determine whether the incident at the Battered Beaver falls under the

---

[3] The Injured Parties combined some of the factors under the single heading. The Court will address the Injured Parties' arguments in the same manner raised in their brief.

4

1 Assault and Battery coverage limits or the Liquor Liability coverage limits. Interpretation of
2 contractual language in insurance policies is not uncommon to federal courts and generally does
3 not require novel issues of state law. See Progressive Cas. Ins. Co. v. Dalton, No. 2:12-cv-00713-
4 MCE-CKD, 2012 WL 6088313, at *7 (E.D. Cal. Dec. 6, 2012) ("While the interpretation of an
5 insurance policy 'is governed by state law, the principles of contract interpretation are well settled
6 and [a federal district] court is an appropriate forum to adjudicate [the] matter.'").

7 In their reply, the Injured Parties argue that "the issues are more complex than Plaintiff
8 states." (Reply in Supp. of Defs.' Mot. to Stay Federal Action 1:25-3:27.) However, the Injured
9 Parties do not cite any novel legal issues. The Injured Parties only summarize the law pertaining
10 to the liability of tavern keepers who serve alcoholic beverages to their patrons.

11 Since there is no indication that this declaratory relief action will require needless
12 determination of novel state law issues, this factor weighs against the Injured Parties' requested
13 stay.

14 **B.     A Stay Would Not Discourage Forum Shopping**

15 The Injured Parties "do not accuse [Plaintiff] of any particular improper conduct regarding
16 'forum shopping.'" (MPA to Stay 6:22-23.) The Court notes that, at the time this action was
17 filed, the state court action had not been filed yet. The Court further notes that Plaintiff is not a
18 party to the state court action. Accordingly, there is no suggestion that Plaintiff is engaging in
19 forum shopping. This factor weighs against the Injured Parties' requested stay.

20 **C.     A Stay Would Avoid Some Duplicative Litigation**

21 The Injured Parties contend that this declaratory relief action raises issues that overlap
22 with the state court action. This is true to a limited extent, as this action may involve the
23 resolution of factual issues that are identical to those that will be resolved in the state court action.
24 Both courts will likely be asked to make factual determinations pertaining to the incident that
25 occurred at the Battered Beaver—this Court, to determine how the incident will be treated under
26 the insurance policy, and the state court, to determine liability on the part of the perpetrators and
27 the business establishment.
28 / / /

1    While there may be some overlap in the factual issues, the legal issues in this proceeding
2    and in the state court action are unrelated.  Plaintiff is not a party to the state court proceeding and
3    the issues relating to the interpretation of the insurance contract are not raised in the state court
4    proceeding.  In their reply, the Injured Parties argue that "[i]n order to determine whether the
5    coverage should apply here, this Court would need to make determinations regarding the *Delgado*
6    factors" (Reply in Supp. of Defs.' Mot. to Stay Federal Action 6:2-4.), or, in other words,
7    determine whether Masonmar would be liable pursuant to Delgado v. Trax Bar & Grill, 36
8    Cal.4th 224 (2005).[4]  However, this Court need not determine whether liability exists or discuss
9    the Delgado factors.  This declaratory relief action is limited to determining the proper
10   interpretation of the insurance policy.  The issue of insurance coverage is distinct from the issue
11   of liability.  This distinction is demonstrated by the possibility of settlement: it is possible that the
12   parties settle without admitting liability and the duty to indemnify under the insurance contract is
13   triggered irrespective of the fact that liability had not been adjudicated.

14   Accordingly, at most, this proceeding would call for duplicative adjudication of the facts
15  surrounding the Battered Beaver incident.  The Court finds that this factor weighs only slightly in
16  favor of granting a stay.

17          **D.     This Declaratory Relief Action Would Not Settle All Aspects of the
                    Controversy and Will Clarify the Legal Relations at Issue**
18

19   The Injured Parties' motion does not address whether this declaratory relief action will
20  settle all aspects of the controversy between Plaintiff, the Injured Parties and Masonmar and does
21  not address whether this action will clarify the legal relations between those parties.  Instead, the
22  Injured Parties argue that they "have the right to litigate their claims in the applicable state venue"
23  and "this Court should not intervene and address issues that have been raised and will be squarely
24  addressed in the state court cases."  (MPA to Stay 7:4-10.)  However, those points are not
25  relevant to whether this action will settle all aspects of the controversy or clarify the legal

---

[4] In Delgado, the Supreme Court of California addressed the circumstances in which a bar has a "special relationship" with its patrons, giving rise to an affirmative duty to protect those patrons from the conduct of third parties.

1 relations.

2 This declaratory relief action will not settle all aspects of the controversy between
3 Plaintiff, the Injured Parties and Masonmar. As discussed above, the legal issues in this action
4 are distinct from those raised in the state court action.

5 Further, this declaratory relief action will serve a useful purpose in clarifying the legal
6 relations between Plaintiff, the Injured Parties and Masonmar. The facts here are similar to those
7 in Eureka Federal Sav. and Loan Ass'n v. American Cas. Co. of Reading, Pa., 873 F.2d 229 (9th
8 Cir. 1989). In Eureka, an insurer brought a declaratory action seeking to establish the liability
9 limits in an insurance policy. Id. at 230-31. Establishing the liability limits was necessary to
10 facilitate settlement in an underlying action because the insurer contended that the maximum
11 liability coverage was $20 million whereas the insured contended that the maximum liability
12 coverage was $100 million, resulting in a stalemate during settlement talks. Id. at 231.
13 Accordingly, the Court held that declaratory relief was appropriate because it served a useful
14 purpose in clarifying and settling the legal relations in issue. Id. at 231-32.

15 Here, in the absence of the requested declaratory relief, settlement efforts could be
16 stymied if Plaintiff, Masonmar and the Injured Parties continue to dispute the applicable coverage
17 limits. It may be impossible for Masonmar to settle for over $100,000 if the applicable coverage
18 limit is $100,000 and Masonmar is economically incapable of covering any excess. Declaratory
19 relief will serve a useful purpose by clarifying Plaintiff and Masonmar's respective liabilities,
20 thereby increasing the chances of settlement. Hypothetically speaking, if the Court issued a
21 declaratory judgment in Plaintiff's favor, finding the applicable insurance limit to be $100,000,
22 the Injured Parties may be more willing to settle their claims for a lower amount. Conversely, a
23 declaratory judgment against Plaintiff may make Plaintiff more willing to settle the claims for an
24 amount closer to $1,000,000. In either case, declaratory relief pushes to parties closer to
25 settlement. Accordingly, this factor weighs against the Injured Parties' requested stay.

26 **E.    Declaratory Relief is not Being Sought for the Purpose of Procedural Fencing**
27 The Injured Parties argue that Plaintiff "filed this action in the hopes of getting a decision
28 before the State Action is decided. This behavior amounts to procedural fencing." (MPA to Stay

7:15-17.) Contrary to the Injured Parties' assertion, there is little evidence of procedural fencing or an unjust attempt to obtain res judicata in this declaratory relief action. There is no apparent procedural advantage gained by Plaintiff's declaratory relief action, particularly given that Plaintiff is not a party to the state court action and the legal issues resolved here are not at issue in the state court action. Accordingly, this factor weighs against the Injured Parties' requested stay.

### F. This Declaratory Relief Action Involves Little Entanglement between the Federal and State Court Systems

Plaintiff argues that "this declaratory relief action will result in the adjudication in both this Court and the state court of the issues of underlying facts." (MPA to Stay 7:19-22.) While this is true in a limited sense given that both actions will require adjudication of the facts pertaining to the incident at the Battered Beaver, there is no entanglement with respect to the legal issues. Accordingly, this factor only weighs slightly in favor of a stay.

### G. The Convenience of the Parties and the Availability of Other Remedies

The Injured Parties argue that it would be more convenient for the issues to be resolved in Stanislaus County because "[t]he majority of parties and witnesses reside in Stanislaus County." (MPA to Stay 7:25-27.) The Injured Parties contend that "[r]equiring the witnesses and parties to engage in overlapping discovery in both Fresno and Modesto would be inconvenient." (MPA to Stay 7:25-27.)

The Injured Parties' convenience arguments are unavailing for two reasons. First, the Injured Parties fail to explain why discovery would physically occur in Fresno. Although this Court is located in Fresno, Stanislaus County/Modesto is located within this federal district. The parties may conduct discovery in Modesto in connection with this case if it is more convenient for them. Second, the legal claims raised in this declaratory relief action will be resolved at some point, irrespective of a stay, so to the extent that this declaratory relief action requires the parties and witnesses to travel from Stanislaus County to Fresno, this travel would be required irrespective of a stay. While this travel may be avoided if the state court action was resolved in favor of Masonmar, resulting in dismissal of this declaratory relief action, that alone does not strongly justify a stay. Accordingly, there is little convenience gained by staying this action and

the convenience factor only negligibly weighs in favor of a stay.

The Injured Parties argue that the availability of other remedies factor is only "intended to address the situation where a party is requesting *the dismissal* (rather than a mere stay) of the entire declaratory relief action...." (MPA to Stay 8:1-6.)  In other words, the Injured Parties contend that this factor does not weigh against granting a stay because Plaintiff's remedies are being delayed by a stay, as opposed to being entirely eliminated.

However, Plaintiff's remedies would be prejudiced if this action were stayed.  Part of the purpose of this declaratory relief action is to clarify the legal relations between the parties and to facilitate settlement by clarifying the respective liabilities of Masonmar and Plaintiff.  As discussed above, a declaratory judgment specifying the applicable coverage limit would help facilitate early settlement by definitively determining how much Plaintiff would have to contribute toward a monetary judgment against Masonmar on the claims asserted by the Injured Parties.  If this case were stayed until the conclusion of the underlying state court action, this benefit would be eliminated since the chance for early settlement would be lost.  Since there are no other remedies that would provide the settlement facilitation benefits that would be gained in this declaratory relief action, this factor weighs against granting a stay.

### H.     The Brillhart/Dizol Factors Weigh Against Granting a Stay

Of the nine Brillhart/Dizol factors, six factors weigh definitively against granting a stay while three factors weight slightly in favor of granting a stay.  Taken together, the balance of factors weigh against granting a stay in this declaratory relief action.  Granting a stay provides little benefit while depriving the parties of clarification of the applicable insurance coverage policy, which will hinder efforts to settle.  Accordingly, the Court will deny the motion to stay.

//
//
//
//

# III.

# CONCLUSION AND ORDER

For the reasons set forth above, the Court finds that this matter should not be stayed. Accordingly,

IT IS HEREBY ORDERED that the Injured Parties' motion to stay is DENIED.

IT IS SO ORDERED.

Dated:   **June 7, 2013**

UNITED STATES MAGISTRATE JUDGE