1

2

3

4          **UNITED STATES DISTRICT COURT**

5          **EASTERN DISTRICT OF CALIFORNIA**

6

7  **NORTH EAST INSURANCE COMPANY,**          **CASE NO. 1:13-CV-364 AWI SAB**
   **a Maine corporation,**
8
                    **Plaintiff**                **ORDER ON CROSS MOTIONS FOR**
9                                                **SUMMARY JUDGMENT**
                    **v.**
10
   **MASONMAR, INC., a California**             (Doc. Nos. 27, 30)
11 **corporation, DANIEL MILA,**
   **FLORENCIO VELASCO, and NICO**
12 **BUSTOS,**

13                  **Defendants**

14

15          This is an insurance policy limits dispute between Plaintiff North East Insurance Co.

16  ("North East") against Defendants Daniel Mila, Florencio Velasco, and Nico Bustos (collectively

17  "Claimants").[1]  North East seeks a declaration that the applicable policy limit in a dispute between

18  Claimants and North East's insured is $100,000.00, while Claimants seek a declaration that the

19  policy limit is $1.1 million dollars.  Both sides have filed motions for summary judgment on the

20  applicable policy limits.  For the reasons that follow, the Court will grant North East's motion,

21  deny Claimants' motion, and declare that the applicable policy limits is $100,000.00.

22

23                  **FACTUAL BACKGROUND[2]**

24          Masonmar, Inc. ("Masonmar") does business as "The Battered Beaver," a tavern in

25  Oakdale, California.  JUMF 1.  On February 25, 2012, while visiting The Battered Beaver,

26

27  _____
    [1] Defendant Masonmar, Inc. was dismissed from this case on May 30, 2013, pursuant to a stipulation between
    Masonmar and North East.

28  [2] A reference to "JUMF" is a reference to the parties' Joint Undisputed Material Facts.

1    Claimants became involved in an altercation with two other customers, Benjamin Crouch and

2    Nicholas Vanlieshout.  JUMF 2.  Claimants allege that they suffered injuries when Crouch and

3    Vanlieshout attacked, stabbed, and struck them repeatedly.  JUMF 3.  Crouch, Vanlieshout, and

4    Claimants were all adults in February 2012.  JUMF's 15, 16.

5         North East issued a policy of liability insurance, Policy No. CPPAS00264-11, ("the

6    Policy") to Masonmar, effective from October 14, 2011 through October 14, 2012.  JUMF 4.  The

7    Policy afforded, in addition to certain property insurance, Commercial General Liability ("CGL")

8    insurance with per-occurrence limits of liability of $1 million, under Form CG 00 01 10 01.

9    JUMF 5.  The CGL contained a Liquor Liability Exclusion, which excluded coverage for damages

10   for which the "insured may be held liable by reason of:  (1) Causing or contributing to the

11   intoxication of any person; (2) The furnishing of alcoholic beverages to a person under the legal

12   drinking age or under the influence of alcohol; or (3) Any statute, ordinance or regulation relating

13   to the sale, gift, distribution or use of alcoholic beverages."  See Doc. No. 1-1; JUMF 6.  The

14   Liquor Liability Exclusion only applied if the insured was in the business of "manufacturing,

15   distributing, selling, serving, or furnishing alcoholic beverages."  See Doc. No. 1-1; JUMF 6.

16        The Policy's CGL provision was modified by an Assault and Battery Limitation ("ABL")

17   endorsement, Form CG9 21 20 10 07.  JUMF 7.  The ABL reduced the Policy's per-occurrence

18   limits of liability under the CGL to $100,000 for damages and supplementary payments alleged or

19   claimed for, among other this, "bodily injury" resulting from assault and battery or physical

20   altercations that occur in, on, near or away from the insured's premises.  See JUMF 8.

21        The Policy also afforded Liquor Liability Coverage ("LLC") insurance with per occurrence

22   limits of liability of $1 million, under Form CG 00 33 10 01.  JUMF 9.  The LLC insuring

23   agreement form provided that North East "will pay those sums that the insured becomes legally

24   obligated to pay as damages because of 'injury' to which this section applies if liability for such

25   'injury' is imposed on the insured by reason of the selling, serving or furnishing of any alcoholic

26   beverage."  See JUMF 10.  The LLC form defined "injury" as "all damages including damages

27   because of 'bodily injury' and 'property damage,' and including damages for care, loss of service

28   or loss of support."  JUMF 11.

On April 24, 2013, claimants filed a personal injury lawsuit in Stanislaus County to recover for their stabbing injuries: *Mila, Bustos, and Velasco v. Masonmar, Inc., et al.,* Case No. 684136.  JUMF 12.  The Claimants allege in that case that Masonmar was negligent for failing "to provide adequate security measures" and for failing to protect plaintiffs from Crouch and Vanlieshout.  JUMF 13.  The Claimants also allege Masonmar was negligent because it "continued to serve and/or allowed consumption and/or possession of alcoholic beverages" by Crouch and Vanlieshout when it should not have done so.  JUMF 14.  Claimants demanded that North East pay its policy limits to settle their claims against Masonmar, but a controversy arose as to the amount of the applicable policy limits.  JUMF 17.

## SUMMARY JUDGMENT FRAMEWORK

Cross motions for summary judgment are evaluated separately under the same standards that apply to single summary judgment motions.  See Pintos v. Pacific Creditors Ass'n, 565 1106, 1111 (9th Cir. 2009); ACLU v. City of Las Vegas, 466 F.3d 784, 790 (9th Cir. 2006).  Summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970); Fortyune v. American Multi-Cinema, Inc., 364 F.3d 1075, 1080 (9th Cir. 2004). The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and of identifying the portions of the declarations (if any), pleadings, and discovery that demonstrate an absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007).  A fact is "material" if it might affect the outcome of the suit under the governing law.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986); United States v. Kapp, 564 F.3d 1103, 1114 (9th Cir. 2009).  A dispute is "genuine" as to a material fact if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party.  Anderson, 477 U.S. at 248; Freecycle Sunnyvale v. Freecycle Network, 626 F.3d 509, 514 (9th Cir. 2010).

Where the moving party will have the burden of proof on an issue at trial, the movant must

1    affirmatively demonstrate that no reasonable trier of fact could find other than for the movant.

2    Soremekun, 509 F.3d at 984.  Where the non-moving party will have the burden of proof on an

3    issue at trial, the movant may prevail by presenting evidence that negates an essential element of

4    the non-moving party's claim or by merely pointing out that there is an absence of evidence to

5    support an essential element of the non-moving party's claim.  See James River Ins. Co. v. Herbert

6    Schenk, P.C., 523 F.3d 915, 923 (9th Cir. 2008); Soremekun, 509 F.3d at 984.  If a moving party

7    fails to carry its burden of production, then "the non-moving party has no obligation to produce

8    anything, even if the non-moving party would have the ultimate burden of persuasion."  Nissan

9    Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1105-06 (9th Cir. 2000).  If the moving party

10   meets its initial burden, the burden then shifts to the opposing party to establish that a genuine

11   issue as to any material fact actually exists.  See Matsushita Elec. Indus. Co. v. Zenith Radio

12   Corp., 475 U.S. 574, 586 (1986); Nissan Fire, 210 F.3d at 1103.  The opposing party cannot "'rest

13   upon the mere allegations or denials of [its] pleading' but must instead produce evidence that 'sets

14   forth specific facts showing that there is a genuine issue for trial.'"  Estate of Tucker v. Interscope

15   Records, 515 F.3d 1019, 1030 (9th Cir. 2008).

16        The opposing party's evidence is to be believed, and all justifiable inferences that may be

17   drawn from the facts placed before the court must be drawn in favor of the opposing party. See

18   Anderson, 477 U.S. at 255; Matsushita, 475 U.S. at 587; Narayan v. EGL, Inc., 616 F.3d 895, 899

19   (9th Cir. 2010).  While a "justifiable inference" need not be the most likely or the most persuasive

20   inference, a "justifiable inference" must be rational or reasonable.  See Narayan, 616 F.3d at 899.

21   Inferences are not drawn out of the air, and it is the opposing party's obligation to produce a

22   factual predicate from which the inference may be drawn.  See Sanders v. City of Fresno, 551

23   F.Supp.2d 1149, 1163 (E.D. Cal. 2008); UMG Recordings, Inc. v. Sinnott, 300 F.Supp.2d 993,

24   997 (E.D. Cal. 2004).  "A genuine issue of material fact does not spring into being simply because

25   a litigant claims that one exists or promises to produce admissible evidence at trial."  Del Carmen

26   Guadalupe v. Agosto, 299 F.3d 15, 23 (1st Cir. 2002); see Bryant v. Adventist Health

27   System/West, 289 F.3d 1162, 1167 (9th Cir. 2002).  Further, a "motion for summary judgment

28   may not be defeated . . . by evidence that is 'merely colorable' or 'is not significantly probative.'"

4

1  Anderson, 477 U.S. at 249-50; Hardage v. CBS Broad. Inc., 427 F.3d 1177, 1183 (9th Cir. 2006).

2  If the nonmoving party fails to produce evidence sufficient to create a genuine issue of material

3  fact, the moving party is entitled to summary judgment.  Nissan Fire, 210 F.3d at 1103.

4

5                                **CROSS MOTIONS**

6          *Plaintiff's Arguments*

7          North East argues that it is entitled to a declaration that the $100,000 ABL sets the

8  applicable policy limits for Claimants' case.  Claimants have alleged two theories of recovery

9  against Masonmar, one based on inadequate security and one based on the provision of liquor to

10  Crouch and Vanlieshout.

11          With respect to the provision of liquor theory, Masonmar is absolutely immune from

12  liability under Business & Professions Code § 25602, which abolished tort liability for furnishers

13  alcohol unless they furnish alcohol to an intoxicated minor.  Crouch and Vanlieshout were not

14  minors.  When properly applied, § 25602 immunity means that Masonmar cannot be liable "by

15  reason of the selling, serving, or furnishing of any alcoholic beverage," which is the requirement

16  for indemnity under the LLC.  Because Claimants' negligent provision theory cannot result in

17  liability, the $1 million LLC does not apply to Claimants' case.

18          With respect to the inadequate security claim, that theory is based on the "special

19  relationship doctrine."  At bottom, the theory is nothing more than a garden variety premises

20  liability theory.  The California Supreme Court in *Delgado v. Trax Bar & Grill*, 36 Cal.4th 224

21  (2005) stated that a tavern keeper's duty to protect patrons arises from one of several

22  circumstances, none of which necessarily involves or depends upon the furnishing of alcohol.

23  Under *Delgado*, the duty to protect may arise, and liability may be imposed regardless, of whether

24  anyone has been furnished alcohol.  This is significant because case law interpreting the phrase

25  "by reason of" has that it is a narrow term that requires direct or proximate causation.  Here, the

26  gravamen of Claimants' theory is failure to protect, not furnishing alcohol.  Any liability for

27  failure to protect does not result directly from the furnishing of alcohol.  Thus, the furnishing of

28  alcohol is irrelevant to Claimants' inadequate security theory, and does not trigger the limits of the

1 | LLC.  Instead, Claimants' inadequate security claim falls under the Policy's CGL provision and

2 | the $100,000 ABL limit.  Claimants are improperly attempting to circumvent the ABL by giving

3 | the LLC an overly expansive meaning.  To do so would render the ABL a dead appendage to the

4 | Policy.

5 | *Defendants' Arguments*

6 | Claimants argue that they are entitled to a declaration that the $1 million LLC limit, as well

7 | as $100,000 under the CGL, set the applicable Policy limits for the negligent security claims.  The

8 | California Supreme Court in *Delgado* recognized that tavern keepers owe a duty of care to its

9 | patrons because of the special relationship as a seller of liquor, and when certain circumstances

10 | exist.  In other words, the duty imposed on a tavern keeper is because the tavern keeper is selling

11 | alcoholic beverages.  If a defendant is not a tavern keeper that serves intoxicating drinks, there is

12 | no liability under *Delgado*.  The Stanislaus County case is pled in conformity with *Delgado*'s

13 | teaching.  The duty at issue arises only because the tavern keeper Masonmar is a vendor of

14 | "intoxicating spirits."  Therefore, liability would be imposed "by reason of the selling, serving, or

15 | furnishing of any alcoholic beverage."

16 | A plain reading of the LLC shows that coverage clearly exists.  Exclusions are narrowly

17 | construed, but coverage provisions are construed broadly.  The LLC applies when liability is "by

18 | reason of" alcohol provision.  A lay person would read "by reason of" as the equivalent of "arising

19 | out of."  One court has opined that "based on" and "arising out of" are identical terms.  "Based

20 | on" and "by reason of" are functionally identical.  Thus, "by reason of" should be read as the same

21 | as "arising out of."  Given the nature of the duty imposed by *Delgado*, a finding of liability would

22 | be imposed "by reason of" the sale of alcohol.

23 | Additionally, North East did not write a policy that covered only sales to intoxicated

24 | minors, nor a policy that clearly excluded claims other than those involving intoxicated minors.

25 | The LLC is broad, and North East should be required to honor the policy.

26 | Claimants also argue that North East's interpretation is improperly restrictive and contrary

27 | to the rules of insurance interpretation under the facts of this case and the LLC's language.  The

28 | cases relied upon deal with exclusions, which are narrowly construed, while this case deals with

6

1   coverage, which is broadly construed.

2       *Legal Standard*

3       "While insurance contracts have special features, they are still contracts to which the

4   ordinary rules of contractual interpretation apply." Powerine Oil Co., Inc. v. Superior Court, 37

5   Cal.4th 377, 390 (2005); Bank of the West v. Superior Court , 2 Cal.4th 1254, 1264 (1992).

6   "[The] goal in construing insurance contracts, as with contracts generally, is to give effect to the

7   parties' mutual intentions." Minkler v. Safeco Ins. Co. of Am., 49 Cal.4th 315, 321 (2010); see

8   Powerine, 37 Cal.4th at 390.  The parties' mutual intentions are to be inferred, if possible, solely

9   from the written provisions of the contract.  Ameron Internat. Corp. v. Insurance Co. of the State

10  of Penn., 50 Cal.4th 1370, 1378 (2010); Powerine, 37 Cal.4th at 390.  First, "[i]f contractual

11  language is clear and explicit, it governs."  Minkler, 49 Cal.4th at 321; Powerine, 37 Cal.4th at

12  390.  "[P]olicy language is interpreted in its ordinary and popular sense and as a layman would

13  read it and not as it might be analyzed by an attorney or an insurance agent."  E.M.M.I, Inc. v.

14  Zurich Am. Ins. Co., 32 Cal.4th 465, 471 (2004).  Language in a contract must be construed in the

15  context of that instrument as a whole, and in the circumstances of that case, and cannot be found to

16  be ambiguous in the abstract. Powerine, 37 Cal.4th at 390-91; Bank of the West, 2 Cal.4th at 1265.

17  "A policy provision will be considered ambiguous when it is capable of two or more

18  constructions, both of which are reasonable."  Powerine, 37 Cal.4th at 390; see Ameron, 50

19  Cal.4th at 1378.  The mere fact that a term is not defined in the policy does not make the term

20  ambiguous.  Powerine, 37 Cal.4th at 390.  Second, "[i]f the terms are ambiguous . . . [courts]

21  interpret them to protect the objectively reasonable expectations of the insured."  Minkler, 49

22  Cal.4th at 321; Bank of the West, 2 Cal.4th at 1265.  This step has also been expressed as

23  interpreting "the provisions in the way the insurer believed the insured understood them at the

24  time the policy was purchased."  Ameron, 50 Cal.4th at 1378; Safeco Ins. Co. v. Robert S., 26

25  Cal.4th 758, 762 (2001).  Third, "[i]f an asserted ambiguity is not eliminated by the language and

26  context of the policy, courts then invoke the principle that ambiguities are generally construed

27  against the party who caused the uncertainty to exist (i.e., the insurer) in order to protect the

28  insured's reasonable expectation of coverage."  Powerine, 37 Cal.4th at 391; La Jolla Beach &

1  Tennis Club, Inc. v. Industrial Indemnity Co., 9 Cal.4th 27, 37 (1994); see Minkler, 49 Cal.4th at

2  321.

3          "To further ensure that coverage conforms fully to the objectively reasonable expectations

4  of the insured, the corollary rule of interpretation has developed that, in cases of ambiguity, basic

5  coverage provisions are construed broadly in favor of affording protection, but clauses setting

6  forth specific exclusions from coverage are interpreted narrowly against the insurer." Minkler, 49

7  Cal.4th at 322; see MacKinnon v. Truck Ins. Exchange, 31 Cal.4th 635, 648 (2003).  "Extrinsic

8  evidence is admissible to interpret the instrument, but not to give it a meaning to which it is not

9  reasonably susceptible."  City of Manhattan Beach v. Superior Ct., 13 Cal.4th 232, 238 (1996);

10 Parsons v. Bristol Dev. Co., 62 Cal.2d 861, 866 (1965).

11         *Discussion*

12         a.      Negligent Provision Of Alcohol

13         "No person who sells, furnishes, gives, or causes to be sold, furnished, or given away, any

14 alcoholic beverage [to a habitual or common drunkard or an obviously intoxicated person] shall be

15 civilly liable to any injured person or the estate of such person for injuries inflicted on that person

16 as a result of intoxication by the consumer of such alcoholic beverage."  Cal. Bus. & Prof. Code §

17 25602(b);[3] Elizarraras v. Los Angeles Private Sec. Servs., Inc., 108 Cal.App.4th 237, 243 (2003).

18 The intent behind this immunity was to abrogate developing case law and reinstate "prior judicial

19 interpretation finding the consumption of alcoholic beverages rather than the serving of alcoholic

20 beverages as the proximate cause of injuries inflicted upon another by an intoxicated person."

21 Cal. Bus. & Prof. Code § 25602(c); Cory v. Shierloh, 29 Cal.3d 430, 435-36 (1981).  The

22 immunity created by § 25602(b) has been characterized as a "sweeping civil immunity."  Strang v.

23 Cabrol, 37 Cal.3d 720, 724 (1984); Ruiz v. Safeway, Inc., 209 Cal.App.4th 1455, 1462 (2012);

24 Elizarraras, 108 Cal.App.4th at 243.  Section 26502.1, however, creates an exception to §

25 25602(b)'s immunity when alcoholic beverages are sold to an obviously intoxicated minor.  See

26 ────────────

27 [3] Civil Code § 1714 provides a similar immunity for "social hosts" who furnish alcohol.  See Cal. Civ. Code § 1714(c); Cory v. Shierloh, 29 Cal.3d 430, 435-37 (1981).  The parties' briefing focuses more on the immunity of § 25602.  Based on the parties' focus, and given that The Battered Beaver is a commercial establishment, the Court

28 will also focus on § 25602(b).

1  Cal. Bus. & Prof. Code § 25602.1; Elizarraras, 108 Cal.App.4th at 244.  Since § 25602.1 is the

2  sole exception to § 26502(b) immunity, it is construed narrowly.  See Ruiz, 209 Cal.App.4th at

3  1462; Elizarraras, 108 Cal.App.4th at 244.

4        Here, Claimants have conceded, for purposes of this motion, that their negligent provision

5  claim would be subject to dismissal in state court.  See Doc. No. 29 at 9 n.7.  Although Claimants

6  do not expressly state why they are a making such a concession, presumably it is because of §

7  25602(b).  See Strang, 37 Cal.3d at 724; Ruiz, 209 Cal.App.4th at 1462; Elizarraras, 108

8  Cal.App.4th at 243.  Given Claimants' concession and § 25602(b), the negligent provision claim

9  does not trigger the duty to indemnify under the Policy.[4]

10        b.    Meaning of "By Reason Of"

11        As quoted above, the LLC states that North East "will pay those sums that the insured

12  becomes legally obligated to pay as damages because of 'injury' to which this section applies if

13  liability for such 'injury' is imposed on the insured by reason of the selling, serving or furnishing

14  of any alcoholic beverage."  JUMF 10.  There is no dispute that the harm suffered by the

15  Claimants is an "injury," but there is a dispute as to the meaning of the phrase "by reason of."

16        North East contends that the phrase should be construed narrowly, while Claimants

17  contend that the term is equivalent to "arising out of," which is broadly construed.  Courts have

18  given terms such as "arising out of," "arising from," and "based on" expansive meanings.  See

19  Medill v. Westport Ins. Corp., 143 Cal.App.4th 819, 830 (2006) (discussing "arising out of" and

20  "arising from"); Southgate Recreation and Park Dist. v. California Assn. for Park and Recreation

21  Ins., 106 Cal.App.4th 293, 301 (2003) (discussing "arising out of"); Century Transit Sys., Inc. v.

22  American Empire Surplus Lines Ins. Co., 42 Cal.App.4th 121, 127 n.4 (1996) (equating the term

23  "based on" with "arising out of").  The term "arising out of" will "broadly link[] a factual situation

24  with the event creating liability, and connotes only a minimal causal connection or incidental

25  relationship."  Medill, 143 Cal.App.4th at 830; Southgate, 106 Cal.App.4th at 301 (noting that

26
27
28

[4] California courts recognize that § 25602(b) "does not preclude all actions against [bar owners]," and that a bar owner has a "duty of care to take reasonable steps to protect his or her guests from the aggressive conduct of other persons on the premises." Cantwell v. Peppermill, Inc., 25 Cal.App.4th 1797, 1801, 1803 (1994); see also Saatzer v. Smith, 122 Cal.App.3d 512, 518 (1981).  Thus, § 25602(b) does not apply to the negligent failure to protect cause of action. See Cantwell, 25 Cal.App.4th at 1801; Saatzer, 122 Cal.App.3d at 518.

"arising out of" connotes "only a 'slight connection' or an 'incidental relationship' between the injury and the . . . risk."). The Court has not found similar descriptions of the term "by reason of," and the parties have cited no cases that define or discuss that phrase. In the insurance context, and relying on the 1990 Sixth Edition of Black's Law Dictionary, the Illinois Supreme Court has held that "by reason of" means "because of." Crum & Forster Managers Corp. v. Resolution Trust Corp., 620 N.E.2d 1073, 1079 (Ill. 1993). In the context of statutory interpretation, California courts have indicated that the terms "for," "by reason of," "because of," and "on account of" have similar meanings. See Glassell Dev. Co. v. Citizens Nat. Bk., 191 Cal. 375, 385 (1923); Stark v. Pioneer Casualty Co., 139 Cal.App. 577, 582 (1934). In the absence of additional authority, the Court interprets the phrase "by reason of" to mean "because of" or "on account of." See Glassell, 191 Cal. at 385; Stark, 139 Cal.App. at 582; Crum & Forster, 620 N.E.2d at 1079.

It seems to the Court that the phrases "by reason of," "on account of" or "because of" are not as expansive as phrases like "arising out of." This is in accord with the Illinois Supreme Court. In Crum & Forster, the insurance policy at issue covered claims that were made "by reason of any act, error, or omission in [real estate] professional services." Crum & Forster, 620 N.E.2d at 1079. The Illinois Supreme Court explained that there "must be a direct, causal relationship between the insured's performance of real estate services and the underlying claims made against the insured . . . ." Id. In California, the phrase "arising out of" creates no causation standard, rather the phrase is used to link a factual situation with the event creating liability. Medill, 143 Cal.App.4th at 830. The Court sees no reason why "by reason of" should not also be read as expressing a link, as opposed to creating a standard of causation. Therefore, taking Medill and Crum & Forster together, the Court will interpret the phrase "by reason of" as a phrase that creates a more direct relationship or link than the broad link created by the phrase "arising out of."[5] The question becomes whether the negligent protection claim against Masonmar would

---

[5] The Court is aware that it is interpreting a coverage provision. In the case of an ambiguity, coverage provisions are construed broadly in favor of coverage. See Minkler, 49 Cal.4th at 322. However, this rule does not mean that a provision is given a meaning that is broader than the language would otherwise permit. Cf. Southgate, 106 Cal.App.4th at 301 (giving the phrase "arising out of" a broad and expansive meaning within an exclusionary clause). Unless a different definition is expressly provided in different parts of a policy, a term or phrase should be given the same meaning within and throughout a policy. See E.M.M.I., 32 Cal.4th at 475.

1    create liability by reason of, i.e. because of or on account of, the selling, serving, or furnishing of

2    any alcoholic beverage.

3            c.       Negligent Protection

4            North East essentially argues that the LLC coverage applies only when there was an

5    actually serving, selling, or furnishing of alcohol.  That is, liability that arises directly out of the

6    actual sale of alcohol.  This interpretation has led courts from other jurisdictions to conclude that

7    liability for failure to protect is a form of general negligence and does not arise directly out of the

8    furnishing of alcohol.  See, e.g., Mount Vernon Fire Ins. Co. v. Olmos, 808 F.Supp.2d 1305, 1308

9    (D. Okla. 2011) (interpreting a liquor liability coverage provision);[6] Capitol Indem. Corp. v.

10   Blazer, 51 F.Supp.2d 1080, 188-89 (D. Nev. 1999) (and cases cited therein) (interpreting a liquor

11   liability exclusion).  This position is consistent with the plain language of the LLC coverage

12   provision, and the phrase "by reason of."

13           On the other hand, Claimants essentially argue that the LLC coverage is not as restrictive

14   as North East suggests, but would also cover claims that involve the breach of a duty that is tied

15   particularly to a furnisher of alcohol.  The California Supreme Court has discussed a tavern

16   keeper's duty to protect:

17           . . . California decisions have long recognized, under the special relationship
             doctrine, that a proprietor who serves intoxicating drinks to customers for
18           consumption on the premises must "exercis[e] reasonable care to protect his
             patrons from injury at the hands of fellow guests," and that such a duty "arises …
19           when one or more of the following circumstances exists: (1) a tavern keeper
             allowed a person on the premises who has a known propensity for fighting; (2) the
20           tavern keeper allowed a person to remain on the premises whose conduct had
             become obstreperous and aggressive to such a degree the tavern keeper knew or
21           ought to have known he endangered others; (3) the tavern keeper had been warned
             of danger from an obstreperous patron and failed to take suitable measures for the
22           protection of others; (4) the tavern keeper failed to stop a fight as soon as possible
             after it started; (5) the tavern keeper failed to provide a staff adequate to police the
23           premises; and (6) the tavern keeper tolerated disorderly conditions."

24           Id. at 241 (citations omitted); see also Slawinski v. Mocettini, 217 Cal.App.2d 192, 196

25   (1963).  Additionally, an Illinois federal court has held that there was no coverage under a liquor

26   liability policy (which had materially identical language to the LLC) for claims involving a tavern

27   _____

28   [6] Reversed on other grounds, Mount Vernon Fir. Ins. Co. v. Okmulgee Inn Venture, LLC, 451 Fed. Appx. 745 (10th
     Cir. 2011).

keeper's alleged failure to protect patrons from one another.  See Capitol Specialty Ins. Corp. v. Whitaker, 2009 U.S. Dist. LEXIS 82528 (S.D. Ill. Sept. 10, 2009).  Relying on Illinois law, the *Whitaker* court explained that there was no coverage because "the liability at issue stems from the duty of a business owner to protect his business invitees, not the duty of a seller, server or furnisher of alcohol to protect others from his intoxicated patrons."  Id. at *14.  The language of *Delgado* suggests that California, unlike Illinois, may impose a particular duty to protect on those who serve intoxicating drinks.  Under the language of *Delgado* and the rationale of *Whittaker*, the Court cannot say that Claimants' interpretation is per se unreasonable.

However, insurance policy terms are also to be interpreted in the context of the policy as a whole.  See Powerine, 37 Cal.4th at 390-91; Bank of the West, 2 Cal.4th at 1265.  Here, the Policy is composed of three separate "forms": the CGL, the ABL endorsement to the CGL, and the LLC.  See Doc. Nos. 1-1, 1-2, 1-3.  The CGL is entitled "Commercial General Liability Coverage Form."  Doc. No. 1-1.  The CGL contains a "Liquor Liability Exclusion" that applies to an insured who is in the business of manufacturing, distributing, selling, serving, or furnishing alcoholic beverages.  See id.  As described above, the CGL's Liquor Liability Exclusion excludes liability by reason of:  "(1) causing or contributing to the intoxication of any person; (2) the furnishing of alcoholic beverages to a [minor] or a [person] under the influence of alcohol; or (3) any statute, ordinance, or regulation relating to the sale, gift, distribution, or use of alcoholic beverages."  Id.  The ABL endorsement is entitled "Assault and Battery Limitation."  Id.  The ABL states that it "modifies insurance provided under the following part:  Commercial General Liability Coverage Part," and then sets a per occurrence limit of insurance of $100,000.00.  Id.  The LLC is entitled "Liquor Liability Coverage Form."  Doc. No. 1-3.  As already discussed, the coverage provided by the LLC is for liability imposed "by reason of the selling, serving, or furnishing of an alcoholic beverage."  Id.  The LLC also contains an exclusion for "Your Product," but then explains that the exclusion does not apply if liability is by reason of:  "(1) causing or contributing to the intoxication of any person; (2) the furnishing of alcoholic beverages to a [minor] or a [person] under the influence of alcohol; or (3) any statute, ordinance, or regulation relating to the sale, gift, distribution, or use of alcoholic beverages."  Id.

The structure of the Policy shows that the LLC is designed to provide coverage for the claims that the CGL's Liquor Liability Exclusion would otherwise exclude.  First, the title of the CGL's "Liquor Liability Exclusion" is a mirror image of the LLC's "Liquor Liability Coverage Form" title.  This indicates a relationship between the LLC's coverage provision and the CGL's exclusion.  Second, and relatedly, the CGL's Liquor Liability Exclusion applies if the insured is in the business of manufacturing, distributing, selling, serving, or furnishing alcohol, while the LLC applies to liability imposed by reason of selling, serving, or furnishing alcohol.  Although "manufacturing" and "distributing" are not part of the LLC's coverage language, the LLC's use of the terms "selling, serving, or furnishing" further indicates a relationship between the LLC and the CGL Liquor Liability Exclusion.  Third, the exact three categories excluded by the CGL Liquor Liability Exclusion (causing or contributing to intoxication, provision of alcohol to a minor or drunkard, and violation of an alcohol related statute) are expressly excepted from the LLC's "Your Product" exclusion.  If the LLC's covering clause did not include those three categories of liability, then there would be no need to except them from the "Your Product" exclusion.  That is, there is no need to say that an exclusion does not apply in three circumstances, if the three circumstances are not already covered by the policy.  Fourth, although the LLC's covering language does not list the CGL's three liquor liability exclusions, liability for causing or contributing to intoxication, serving alcohol to a minor, or breaking a law relating to the provision of alcohol, could all reasonably be construed as liability that is imposed "by reason of the selling, serving, or furnishing of any alcoholic beverage."

In light of the above, the Court will interpret the LLC as covering claims that stem from the actual provision of alcohol or the violation of a statute/regulation relating to the sale, gift, distribution, or use of alcohol.  This interpretation respects the meaning of "by reason of," is consistent with the plain language of the LLC, and is consistent with the structure of the Policy as a whole.  This interpretation is also consistent with the expectations of a reasonable insured.  It is unknown why an LLC Form would be necessary, unless it is to provide for the coverage that the standard CGL policy otherwise would exclude.  The Court's interpretation is very close to North East's interpretation, but takes into account the language dealing with liability for violation of a

1  statute/regulation that is found in both the CGL exclusion and the LLC.[7]

2      With this understanding of the LLC, Claimants' failure to protect claim is not covered.

3  The *Delgado* failure to protect claims do not include serving alcohol to minors or intoxicated

4  persons, and they do not include either causing or contributing to intoxication.  Also, there is no

5  indication that a statute, ordinance, or regulation relating to the sale, gift, distribution or use of

6  alcohol was violated.  Instead, the *Delgado* claims focus on how Masonmar failed to act to

7  properly protect the Claimants.  "The gravamen of the cause of action is that the injury resulted

8  from respondent's failure to protect patrons from the tortious or criminal conduct of others, and

9  not from the furnishing of alcohol." Cantwell v. Peppermill, Inc., 25 Cal.App.4th 1797, 1801

10 (1994).  Any liability for *Delgado* failure to protect claims would not be by reason of/because of

11 the selling, serving, or furnishing of alcohol.  See id.

12      d.    Policy Limits

13      The policy limits at issue are the $1 million limits of the LLC, and the $100,000 limit of

14 the CGL.  Neither side disputes that at least $100,000 of coverage from the CGL policy applies to

15 the Claimants' failure to protect claim.  As discussed above, the Court has concluded that the LLC

16 coverage does not apply.  Therefore, the Court will declare that the policy limits under the Policy

17 that apply to Claimants' state law claims is $100,000.00.

18

19                              **CONCLUSION**

20      Both sides have moved for summary judgment regarding the policy limits that are

21 applicable to Claimants' stat law claims.  After considering the arguments of the parties, the

22 relevant language of the CGL and the LLC, and the structure of the Policy as a whole, the Court

23 concludes that only the CGL would provide coverage.  As a result, the Court will grant North

24 East's motion for summary judgment, will deny the Claimants' motion for summary judgment,

25 and will declare that the applicable policy limits is $100,000.00.

26

27 [7] There are potentially myriad laws relating to the sale, gift, distribution, or use of alcohol.  It is possible that such a law may be violated even though no alcohol is actually "provided."  However, it seems evident that a violation of such

28 a law would very often involve an actual distribution or provision of alcohol.

## **ORDER**

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (Doc. No. 27) is GRANTED;

2. Defendants' motion for summary judgment (Doc. No. 30) is DENIED;

3. It is declared that the policy limits applicable to the Claimants' state law claims for negligent failure to protect is $100,000.00; and

4. The Clerk shall enter judgment in favor of Plaintiff and CLOSE this case.

IT IS SO ORDERED.

Dated:   March 24, 2014     _____

                                SENIOR  DISTRICT  JUDGE

15